UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JOSE MARTINEZ,<br><br>　　　　Plaintiff,<br><br>v.<br><br>CREATIVE CONCEPTS, INC., et al.,<br><br>　　　　Defendants. | 2:13-CV-00248-PMP-VCF<br>2:12-CV-00277-PMP-PAL<br><br>ORDER |

This matter was transferred to the undersigned on July 10, 2013. (Min. Order (Doc. #54).)[1] Presently before the Court is Defendants NPL Construction Co., Ricardo Pringle, and Cavin Donnell's (collectively the "NPL Defendants") Motion to Dismiss for Failure to State a Claim, or in the Alternative, Motion for Judgment on the Pleadings (Doc. #4), filed on February 21, 2013. Defendant Earl Mahan ("Mahan") filed a Joinder (Doc. #9) to the Motion to Dismiss on March 7, 2013. Defendant Mike Kemper ("Kemper") filed a Joinder (Doc. #16) on March 18, 2013. Plaintiff Jose Martinez filed an Opposition (Doc. #41) on May 20, 2013. Defendant Mahan filed a Reply (Doc. #42) on May 30, 2013. The NPL Defendants filed a Reply (Doc. #44) on May 30, 2013.

Also before the Court is Plaintiff's Motion to Remand (Doc. #13) and related Motion to Strike (Doc. #15), filed on March 15, 2013. The NPL Defendants filed Oppositions (Doc. #25, #26) on April 12, 2013. Defendant Mahan filed a Joinder (Doc. #28) to the Oppositions on April 16, 2013. Plaintiff did not file a reply.

---

[1] All docket citations refer to case number 2:13-CV-00248-PMP-VCF unless otherwise noted.

## I. BACKGROUND

The parties are familiar with the factual allegations giving rise to this action, and the Court will not repeat them in detail here except where necessary.  During the relevant time period, Plaintiff was an undocumented immigrant employed by Defendant NPL Construction Co. ("NPL") in Dallas, Texas.  Plaintiff alleges NPL, in conjunction with other Defendants, devised a scheme to fraudulently induce Plaintiff to remain an NPL employee during a time NPL needed labor by promising to sponsor Plaintiff in a program through which Plaintiff could obtain legal status in the United States.  Plaintiff contends Defendants knew from the outset the program would not result in Plaintiff obtaining legal status, but Defendants failed to advise Plaintiff of this fact.

Plaintiff originally brought suit in this Court on February 22, 2012, in a related action, Martinez v. Creative Concepts, 2:12-CV-00277-PMP-PAL ("Martinez I").  Federal jurisdiction in Martinez I was predicated on a federal civil RICO claim.  (Compl. (Doc. #1 in 2:12-CV-00277-PMP-PAL) at 27-28.)  The Court dismissed the federal civil RICO claim without prejudice and declined to exercise supplemental jurisdiction over Plaintiff's state law claims. (Order (Doc. #53 in 2:12-CV-00277-PMP-PAL, (Mahan, J.)).)  The Court granted Plaintiff thirty days to amend.  (Id.)  Rather than amend the complaint in the federal action, Plaintiff filed a new lawsuit asserting a variety of claims against the NPL Defendants and others in Nevada state court on November 2, 2012.  (Pet. for Removal (Doc. #1), Ex. 2 ("Compl.").)  The NPL Defendants removed the action to this Court on February 14, 2013, on the basis that Plaintiff's claims are preempted under Section 301 of the Labor Management Relations Act ("LMRA") because Plaintiff's employment was governed by a collective bargaining agreement ("CBA"). (Pet. for Removal.)  The NPL Defendants also contended removal was proper because Plaintiff's claims raise important questions of federal immigration law.  (Id.)

///

1    The NPL Defendants now move to dismiss, arguing that Texas law applies and,
2 under Texas law, Plaintiff's claims are time-barred.  The NPL Defendants further contend
3 Plaintiff fails to plead fraud with particularity, Plaintiff fails to plead a fiduciary
4 relationship to support his breach of fiduciary duty claims, and Plaintiff's professional
5 negligence claims against Defendant Ricardo Pringle ("Pringle") fail because Pringle did
6 not represent Plaintiff.  The NPL Defendants also argue that because all of Plaintiff's
7 substantive claims fail, his derivative claims for civil conspiracy, concert of action, assisting
8 and participating, and assisting or encouraging also fail.  Alternatively, the NPL Defendants
9 request judgment on the pleadings for Plaintiff's claim for back pay as damages, arguing
10 controlling case law precludes the award of back pay, loss of earnings, and loss of earning
11 capacity to undocumented immigrants working illegally in the United States.  Defendant
12 Mahan joins in the Motion to Dismiss, and separately argues the only references in the
13 Complaint to him occurred in 2002, no cause of action is specifically pled against him, and
14 he is not listed as an actor involved in the alleged conspiracy.  Defendant Kemper also joins
15 in the Motion to Dismiss, arguing no cause of action is specifically pled against him and the
16 NPL Defendants' arguments apply to him.

17    Plaintiff responds by moving to remand this action to Nevada state court.
18 Plaintiff contends he did not allege any federal claims, none of his claims will require
19 interpretation of a CBA, Defendants have not established Plaintiff is bound by any CBA,
20 and the case raises no issue of federal immigration law.  Plaintiff contends this Court
21 previously declined to exercise jurisdiction over these same state law claims in Martinez I.
22 Plaintiff also contends removal suffers from procedural defects because no consent to
23 removal was obtained from Defendant Mahan and the purported consents for Creative
24 Concepts, Inc. and Speidel Enterprises, Inc. are defective because they were not provided
25 by an attorney for these corporations.  For this same reason, Plaintiff moves to strike the
26 consents provided by Defendants Creative Concepts, Inc. and Speidel Enterprises, Inc.

3

On the merits of the Motion to Dismiss, Plaintiff argues Nevada law applies. Plaintiff argues even if Texas law applies, the statute of limitations is tolled pursuant to the discovery rule and Plaintiff did not discover his claims until 2012. Plaintiff also asserts Defendants fraudulently concealed their wrongdoing, thereby tolling the limitations period. Plaintiff contends he adequately has pled fraud with particularity, has alleged facts supporting a breach of fiduciary duty claim, and has alleged facts supporting an attorney/client relationship with Pringle. Finally, Plaintiff argues the NPL Defendants' contention that he cannot obtain back pay is based on a misapplication of case law.

In response to Plaintiff's Motion to Remand, the NPL Defendants argue that this Court did not rule on the preemption issue in Martinez I because Plaintiff originally brought suit in federal court based on a federal civil RICO claim. The NPL Defendants further argue Plaintiff's claims are federal in character, as they are preempted by Section 301 of the LMRA because Plaintiff was a member of the union during the time in question and his claims require interpretation of the applicable CBA. Defendants also argue Plaintiff's claims implicate substantial federal interests regarding federal immigration law, including the damages Plaintiff seeks. The NPL Defendants also argue there are no procedural defects in removal because all Defendants who had been served by the time of removal had consented to removal, and Mahan consented to removal after he had been served. Additionally, and in response to the Motion to Strike, the NPL Defendants argue a corporate representative was capable of consenting on behalf of the corporate Defendants because he had authority to act on behalf of those corporations. The NPL Defendants argue that in light of the controlling authority in this area, Plaintiff should be required to pay the NPL Defendants' fees and costs for having to oppose the Motion to Strike.

**III. MOTION TO REMAND (Doc. #13) AND MOTION TO STRIKE (Doc. #15)**

The Court has resolved similar arguments between the parties regarding removal in a related action, Hernandez v. Creative Concepts, 2:10-CV-02132-PMP-VCF. As the

4

Court explained in <u>Hernandez</u>, the United States Court of Appeals for the Ninth Circuit does not require a consent to removal to be given in any particular form.  See <u>Proctor v. Vishay Intertechnology Inc.</u>, 584 F.3d 1208, 1225 (9th Cir. 2009).  Because a removal notice must be signed pursuant to Federal Rule of Civil Procedure 11, the removing party can remove an action by representing, consistent with Rule 11, that the other defendants consent to removal without providing a written consent from the other defendants.  <u>Id.</u>  The Ninth Circuit thus does not require a corporate defendant to make a formal appearance through counsel to consent to removal.

Consequently, to consent to removal, Defendants Creative Concepts, Inc. and Speidel Enterprises, Inc. did not have to file a formal document which would require attorney representation in this action.  Here, John Speidel signed a written consent on behalf of these corporate Defendants, which NPL attached to the Petition for Removal.  (Pet. for Removal, Ex. 1.)  In the Petition for Removal, NPL's counsel represented that the Creative Concepts Defendants consented to removal, citing the attached consent.  (Pet. for Removal at 2.)  Plaintiffs present no evidence or argument that John Speidel did not consent for the corporate Defendants, or that he lacks authority to do so.  The Court therefore will deny Plaintiff's Motion to Strike the consent.  For this same reason, the Court will deny the Motion to Remand based on a failure to obtain these parties' consent to removal.

As to Defendant Mahan, the consent of a defendant not properly served at the time of removal is not required.  <u>Emrich v. Touche Ross & Co.</u>, 846 F.2d 1190, 1193 n.1 (9th Cir. 1988).  Plaintiff points to no evidence that Mahan was properly served at the time of removal.  According to Defendants, Mahan was served on February 14, 2013, the same date Defendants removed the action to this Court, and Mahan subsequently consented to removal.  (Defs.' Jt. Statement Concerning Removal (Doc. #8).)  To the extent Mahan's consent was required, the failure to obtain all requisite consent when the notice of removal is filed is a procedural defect which may be cured "by obtaining joinder of all defendants

5

prior to the entry of judgment." Destfino v. Reiswig, 630 F.3d 952, 957 (9th Cir. 2011). As Mahan has consented, the Court will deny Plaintiff's Motion to Remand to the extent it is based on a failure to obtain Mahan's consent to removal.

As to the jurisdictional basis for removal, the NPL Defendants have presented evidence Plaintiff was subject to a CBA and Plaintiff presents no contrary evidence. (Defs. NPL Constr. Co., Ricardo Pringle, & Calvin Donnell's Opp'n to Pl.'s Mot. to Remand (Doc. #25), Exs. 1-6.) This Court previously ruled in Hernandez that a negligent supervision claim was preempted by Section 301 of the LMRA to the extent it alleged negligent supervision over NPL's own managers and supervisors, as resolving whether NPL violated a duty would require interpreting the applicable CBA. (Order (Doc. #88 in 2:10-CV-02132-PMP-VCF) at 21-22.) For the same reasons more fully expressed in that Order, the Court finds Section 301 preempts the portion of Plaintiff's negligence claim in count 6 which alleges NPL was negligent by "[f]ailing to properly supervise its supervisors and managers . . . ." (Compl. at 23.) Removal therefore was proper on the basis of federal preemption and the Court will deny Plaintiff's Motion to Remand.[2]

### III. MOTION TO DISMISS (Doc. #4)

#### A. Choice of Law

The parties dispute whether Nevada or Texas law governs Plaintiff's claims. Plaintiff asserts against the NPL Defendants, Kemper, and Mahan (collectively, the "moving Defendants") a variety of tort claims, including fraud, fraudulent inducement, negligent misrepresentation, legal malpractice, negligence per se, negligence, breach of fiduciary duty, civil conspiracy, concert of action, assisting and participating, and assisting or encouraging.

---

[2] The NPL Defendants request fees and costs for having to respond to the Motion to Strike, but they cite no legal authority on which to base an award of fees. The Court therefore will deny the request for fees and costs. LR 7-2(d).

The Court "must apply state substantive law to state law claims, including the forum state's choice of law rules." Love v. Associated Newspapers, Ltd., 611 F.3d 601, 610 (9th Cir. 2010). Nevada has adopted the Restatement (Second) Conflict of Laws' most significant relationship test for tort actions, "unless another, more specific section of the Second Restatement applies to the particular tort." Gen. Motors Corp. v. Eighth Judicial Dist. Ct. of State of Nev. ex rel. Cnty. of Clark, 134 P.3d 111, 116 (Nev. 2006).

The Second Restatement has a specific section on choice-of-law rules for fraud and misrepresentation claims. Section 148(1) of the Second Restatement provides:

> When the plaintiff has suffered pecuniary harm on account of his reliance on the defendant's false representations and when the plaintiff's action in reliance took place in the state where the false representations were made and received, the local law of this state determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

Pursuant to § 6, the Court should consider the following principles:

> (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.

"These principles are not intended to be exclusive and no one principle is weighed more heavily than another." Gen. Motors Corp., 134 P.3d at 117.

Here, Plaintiff alleges he suffered pecuniary harm when he relied on Defendants' false representations regarding the sponsorship program by continuing to work for NPL. The Complaint alleges Plaintiff worked in Dallas, Texas, and Defendants made the false representations to him there. (See Compl. at 6-7, 11-12, 15-16.) Thus, Texas law governs Plaintiff's fraud and misrepresentation claims unless Nevada has a more significant relationship.

7

Nevada does not have a more significant relationship to the fraud-based claims in this case. Although NPL has Nevada contacts and allegedly made similar false representations to NPL employees in Nevada, the alleged misrepresentations at issue in this case were made in Texas, Plaintiff received them in Texas, and Plaintiff suffered harm in Texas. Moreover, none of the § 6 factors support a finding that Nevada has a more significant relationship to Plaintiff's fraud-based claims in this case. The needs of the interstate and international systems support the application of Texas law, as that is where the alleged misrepresentations were made and received, and where Plaintiff felt the harm. Failing to apply Nevada law would not contravene any Nevada policies, but Texas has an interest in having its law apply to misrepresentations made in the state to a person residing and working in the state. Parties whose relationship as between each other was centered in Texas justifiably would expect that Texas law would apply to any misrepresentations made in Texas. Applying Texas law in these circumstances serves the interests of certainty, predictability and uniformity of result. The parties have not identified any impediment to this Court determining and applying Texas law. Accordingly, the Court will apply Texas law to Plaintiff's fraud-based claims.

Plaintiff's other torts are not governed by any specific section of the Second Restatement. Under the Second Restatement's most significant relationship test, the parties' rights and liabilities "with respect to an issue in tort are governed by the local law of the state that, 'with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.'" Gen. Motors Corp., 134 P.3d at 116 (quoting Restatement (Second) Conflict of Laws § 145). As stated above, Texas has the most significant relationship to the claims as between Plaintiff and Defendants in this action. The Court therefore will apply Texas law to Plaintiff's other tort-based claims against the moving Defendants.

///

Even if Nevada law applies, Nevada's borrowing statute would counsel in favor of applying the Texas limitations period, if shorter. See Nev. Rev. Stat. § 11.020 ("When a cause of action has arisen in another state . . . and by the laws thereof an action thereon cannot there be maintained against a person by reason of the lapse of time, an action thereon shall not be maintained against the person in this State . . . ."). Accordingly, the Court will apply Texas law to all of Plaintiff's state law claims.

### B. Statute of Limitations

The NPL Defendants argue that Plaintiff knew about his claims upon his termination in September 2007 because he alleges Defendants told him the sponsorship program would work only if Plaintiff continued to work for NPL. The NPL Defendants further argue that Plaintiff alleges undocumented workers were told in December 2007 of the alleged fraud, and that Plaintiff heard similar statements. The NPL Defendants thus contend Plaintiff's claims are time-barred, as Plaintiff was aware of his injuries in 2007, but did not bring his claims until February 22, 2012.

Plaintiff responds that he did not discover his claims until 2012, when he learned that other NPL employees brought suit against NPL alleging the fraudulent scheme to secure labor from undocumented workers by promising sponsorship in a program by which the workers could obtain legal status in the United States. Plaintiff further contends Defendants fraudulently concealed their scheme, thereby extending the limitations period.

Under Texas law, a statute of limitations begins to run when a particular cause of action accrues. Seureau v. ExxonMobil Corp., 274 S.W.3d 206, 226 (Tex. Ct. App. 2008). Generally, a cause of action accrues "when a wrongful act causes an injury, regardless of when the plaintiff learns of that injury or if all resulting damages have yet to occur." Childs v. Haussecker, 974 S.W.2d 31, 36 (Tex. 1998). Texas recognizes two doctrines that may extend the statute of limitations, the discovery rule and fraudulent concealment. Computer Assocs. Int'l, Inc. v. Altai, Inc., 918 S.W.2d 453, 455-56 (Tex. 1996).

Because Plaintiff was terminated in 2007 and he alleges no misrepresentations or other harmful conduct beyond that time, he suffered his legal injuries no later than 2007. Plaintiff did not file his Complaint in Martinez I until February 2012. As a result, each of Plaintiff's claims is untimely unless the discovery rule or fraudulent concealment extends the time in which Plaintiff could bring suit. See Tex. Civ. Prac. & Rem. Code § 16.003 (two years for legal malpractice and negligence); id. § 16.004(a)(4)-(5) (four years for fraud and breach of fiduciary duty); Navarro v. Grant Thornton, LLP, 316 S.W.3d 715, 719 (Tex. Ct. App. 2010) (two years for conspiracy); HECI Exploration Co. v. Neel, 982 S.W.2d 881, 885 (Tex. 1998) (two years for negligent misrepresentation).

### 1. Discovery Rule

Texas's discovery rule is a "very limited exception to statutes of limitations," which defers the accrual of a cause of action until the plaintiff discovered, or through the exercise of reasonable care and diligence should have discovered, his injury. Computer Assocs. Int'l, 918 S.W.2d at 455; see also Childs, 974 S.W.2d at 40. The discovery rule applies "only when the nature of the plaintiff's injury is both inherently undiscoverable and objectively verifiable." Shell Oil Co. v. Ross, 356 S.W.3d 924, 930 (Tex. 2011).

An injury is inherently undiscoverable if, by its nature, it is "unlikely to be discovered within the prescribed limitations period despite due diligence." S.V. v. R.V., 933 S.W.2d 1, 7 (Tex. 1996). The Court determines whether the type of injury is inherently undiscoverable on a categorical basis. Via Net v. TIG Ins. Co., 211 S.W.3d 310, 314 (Tex. 2006). Thus, the question is not whether the plaintiff discovered his injury within the limitations period, but rather whether the plaintiff's injury is "the type of injury that generally is discoverable by the exercise of reasonable diligence." HECI Exploration Co., 982 S.W.2d at 886.

A lawyer or other fiduciary's misconduct is inherently undiscoverable because "a person to whom a fiduciary duty is owed is either unable to inquire into the fiduciary's

actions or unaware of the need to do so." S.V., 933 S.W.2d at 8; Willis v. Maverick, 760 S.W.2d 642, 645 (Tex. 1988).  However, a fiduciary's misconduct is inherently undiscoverable only so long as the fiduciary relationship exists.  S.V., 933 S.W.2d at 8. Additionally, "when the fact of misconduct becomes apparent it can no longer be ignored, regardless of the nature of the relationship."  Id.

Here, Plaintiff alleges the moving Defendants were either his attorneys or otherwise in a fiduciary relationship with him.  (Compl. at ¶¶ 45-49, 63-66, 126-29.) Taking these allegations as true at this stage of the proceedings, Texas law presumes Defendants' alleged misconduct was inherently undiscoverable so long as the attorney/client or other fiduciary relationship existed.  However, Plaintiff's relationship with the moving Defendants was severed in 2007 when NPL terminated his employment. Plaintiff alleges he was told Creative Concepts would continue to process his application to adjust status even after his termination.  (Id. at ¶¶ 6, 32.)  However, Plaintiff does not allege any continuing relationship with the moving Defendants following his termination from employment with NPL.

Once the alleged fiduciary relationship ended, Plaintiff's claims no longer were inherently undiscoverable.  At that point, Plaintiff could have obtained, through the exercise of reasonable diligence, information on his status adjustment application from the Department of Labor or the Department of Homeland Security before the limitations period expired.  Additionally, upon his termination, Plaintiff had reason to exercise due diligence regarding the viability of his application.  Plaintiff alleges that throughout the sponsorship program, NPL and Creative Concepts personnel repeatedly advised him that he would be eligible for adjustment of status only if he remained employed by NPL.  (See id. at ¶ 11 (alleging the Dallas workers were "specifically told . . . that if they left NPL employment they would not be able to complete the process to become permanent residents of the United States"), ¶ 12 ("Plaintiff and the other employees in attendance were told that NPL had

11

devised and initiated a plan so that undocumented workers who currently worked for NPL, or were soon to be hired by NPL, would become United States permanent residents, if and only if they continued to work for NPL."), ¶ 24 ("During these meetings, the Plaintiff and other attendees were repeatedly told by John and David Speidel and by other employees of the Defendants that the immigration process was ongoing, that the process was going well and that if the [workers] continued to work for NPL they would become legal permanent residents.  These statements were regularly confirmed by NPL and Creative Concepts at NPL worksites and at meetings . . . with the Plaintiff from 2002-2007."), ¶ 27 (alleging that after the Department of Labor certifications were granted, Defendants informed the Dallas workers that "if they continued to work for NPL they would be granted residency"). Consequently, the termination would have caused a reasonably prudent person to investigate his application.

        Plaintiff's claims are types of claims capable of detection within the time allotted for bringing suit, and thus were not inherently undiscoverable following his 2007 termination.  Consequently, the discovery rule does not apply, and Plaintiff's claims accrued in 2007.

### 2.  Fraudulent Concealment

        Fraudulent concealment is a fact-specific equitable doctrine which tolls the running of the limitations period "because a person cannot be permitted to avoid liability for his actions by deceitfully concealing wrongdoing until [the] limitations [period] has run." S.V., 933 S.W.2d at 6.  To establish the defendant fraudulently concealed a cause of action, the plaintiff must show the defendant engaged in a tort, the defendant knew of the tort, the defendant used deception to conceal the cause of action on the tort from the plaintiff, and the plaintiff reasonably relied on the deception.  See Shell Oil Co., 356 S.W.3d at 927; BP Am. Prod. Co. v. Marshall, 342 S.W.3d 59, 68 (Tex. 2011).

///

Deception concealing the cause of action may be shown through "the defendant's active suppression of the truth or failure to disclose when the defendant is under a duty to disclose." Mitchell Energy Corp. v. Bartlett, 958 S.W.2d 430, 439 (Tex. Ct. App. 1997); see also Borderlon v. Peck, 661 S.W.2d 907, 908 (Tex. 1983). A duty to disclose may arise in several circumstances: (1) when there is a fiduciary relationship; (2) when the defendant discloses information, the whole truth must be disclosed; (3) when the defendant makes a representation, new information must be disclosed when that new information makes the earlier representation misleading or untrue; and (4) when the defendant makes a partial disclosure that conveys a false impression. Vial v. Gas Solutions, Ltd., 187 S.W.3d 220, 230 (Tex. Ct. App. 2006).

Fraudulent concealment tolls the statute of limitations only until the plaintiff, "using reasonable diligence, discovered or should have discovered the injury." KPMG Peat Marwick v. Harrison Cnty. Housing Fin. Corp., 988 S.W.2d 746, 750 (Tex. 1999). Knowledge of "facts, conditions, or circumstances which would cause a reasonably prudent person to make inquiry, which, if pursued, would lead to the discovery of the concealed cause of action . . . is equivalent to knowledge of the cause of action." Borderlon, 661 S.W.2d at 909.

The alleged fiduciary relationship between Plaintiff and the moving Defendants created a duty to disclose so long as that relationship existed. However, as with the discovery rule discussed above, that duty lasted only so long as the alleged fiduciary relationship, which ended upon Plaintiff's termination from NPL's employment. Plaintiff does not allege the moving Defendants undertook any post-termination activities which concealed from Plaintiff his potential claims against the moving Defendants.

Once Plaintiff was terminated, he knew facts which would cause a reasonably prudent person to inquire into the viability of his application to adjust status, given the Complaint's allegations that he repeatedly was advised he would be eligible for adjustment

of status only if he remained employed with NPL. Plaintiff could have asked the Department of Labor or the Department of Homeland Security about the viability of his application. For this same reason, Plaintiff did not reasonably rely on any post-termination deception to the extent any such deception is alleged, because reliance is "not reasonable when information revealing the truth could have been discovered within the limitations period." BP, 342 S.W.3d at 68; see also Shell Oil, 356 S.W.3d at 928-29. Fraudulent concealment therefore does not toll the limitations period for Plaintiff's claims.

### 3.  Summary

The discovery rule does not extend the accrual date for Plaintiff's claims because once the fiduciary relationship between Plaintiff and the moving Defendants ended, his claims were not inherently undiscoverable during the limitations period. Fraudulent concealment does not toll the limitations period because Plaintiff could have discovered his claims within the limitations period with the exercise of reasonable diligence. Plaintiff's claims therefore are barred by the applicable statutes of limitations. Accordingly, the Court will grant summary judgment in favor of the moving Defendants on all of Plaintiff's claims.

**IV. CONCLUSION**

IT IS THEREFORE ORDERED that Defendants NPL Construction Co.'s, Ricardo Pringle's, and Cavin Donnell's Motion to Dismiss for Failure to State a Claim, or in the Alternative, Motion for Judgment on the Pleadings (Doc. #4) is hereby GRANTED.

IT IS FURTHER ORDERED Plaintiff Jose Martinez's Motion to Remand (Doc. #13) is hereby DENIED.

IT IS FURTHER ORDERED that Plaintiff Jose Martinez's Motion to Strike (Doc. #15) is hereby DENIED.

IT IS FURTHER ORDERED that Judgment is hereby entered in favor of Defendants NPL Construction Co., Ricardo Pringle, Cavin Donnell, Earl Mahan, and Mike Kemper, and against Plaintiff Jose Martinez.

1   IT IS FURTHER ORDERED that <u>Martinez v. Creative Concepts</u>, 2:12-CV-00277-PMP-PAL is hereby DISMISSED as duplicative of the present case.

DATED: September 19, 2013

_____
PHILIP M. PRO
United States District Judge